VERA GIBSON, ADMINISTRATRIX OF ELDRIDGE GIBSON, v. STEELE'S MILLS, INCORPORATED.

(Filed 16 December, 1925.)

1. **Negligence — Evidence — Proximate Cause—Burden of Proof—Electricity.**

In an action to recover damages for the death of an employee caused by the negligence of defendant, evidence which tends to show that the deceased was employed in defendant's store operated in connection with defendant's cotton mill, and also to a refrigerating plant operated by electricity in a room opening into the store; that the deceased was found dead in the refrigerating room and that the metal parts within the room were charged with a deadly voltage of electricity caused by the live wires carrying the electricity not being properly grounded: *Held,* sufficient upon the issue of defendant's actionable negligence as the proximate cause of the death to take the case to the jury, with the burden of proof on plaintiff.

2. **Negligence — Contributory Negligence — Evidence—Instructions—Directing Verdict.**

Where an employee is killed by the negligence of his employer for failing to properly ground electric wires in a refrigerating plant where the employee was required to go in the discharge of his duties, and the answer alleges that the deceased would have been safe had he confined himself to a part of the room where his duties required him, upon the plea of contributory negligence it was necessary for the defendant to offer evidence upon the ground of his defense, and on his failure to have done so it was not error for the trial judge to direct a verdict in plaintiff's favor upon the issue.

APPEAL by defendant from judgment of Superior Court of RICHMOND County, July Term, 1925, McElroy, J. No error.

Action to recover damages for wrongful death of plaintiff's intestate. Defendant, a corporation engaged in the business of manufacturing cotton goods, conducts a mercantile business in a store building located near its cotton mill, in Richmond County. In connection with said mercantile business, it owns and operates an ice and refrigerator plant located in a room adjacent to its said store building. The motive power for the operation of the machinery composing said plant is electricity, which is brought into the room over wires connected with the motors. The floor of the room is made of concrete, its walls of brick. Much of the machinery and apparatus used in the manufacture of ice, and in the operation of the plant, is composed of iron and other metals.

On 9 December, 1924, plaintiff's intestate, Eldridge Gibson, was employed by defendant as a clerk in its store. It was his duty also to look after and attend to the refrigerator plant in the room adjacent to the store building. During the morning of said day, in the course of his employment, and in the performance of his duties, Eldridge Gibson entered said room; the ice plant was not running at the time, but the air pump was being operated to keep the cold storage room, just over the plant, cool. It was his duty to go into the room about once every hour to see about the plant; soon after he entered said room, his dead body was discovered therein by other employees of defendant.

Plaintiff alleges that the death of her intestate was caused by electrocution after he went into the said room; that the machinery in said room had become charged with electricity as the result of careless and negligent construction of said plant and of the careless and negligent manner in which the electric wires had been installed therein; that the electric feed wires had been run into said refrigerating room in such manner that they touched the iron and metal of the machinery and that they were not grounded; that the result of this careless and negligent manner of installing the feed wires was that the whole current operating the plant passed through the ice carrier and other metal connections to the motors; that plaintiff's intestate, while in the room engaged in the performance of his duties, without warning of the dangerous conditions existing therein, came in contact with the said machinery so charged with electricity and was thereby instantly killed; defendant denies these allegations. By way of further answer and defense, defendant alleges that at the time of the death of plaintiff's intestate, he was at a place in defendant's refrigerating plant where he had no duty to perform for defendant and where defendant had no reason to apprehend or believe that he would be. Defendant further pleads contributory negligence and assumption of risk as defenses to plaintiff's action.

The issues answered by the jury are as follows:

1. Was the death of plaintiff's intestate caused by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. Did the plaintiff's intestate, by his own negligence, contribute to his injury and death, as alleged in the answer? Answer: No.

3. Did plaintiff's intestate assume the risk of his injury and death as alleged in the answer? Answer: No.

4. What damage, if any, is plaintiff entitled to recover? Answer: $7,500.00.

From the verdict upon this judgment, the defendant appealed to the Supreme Court.

*W. R. Jones and Douglass & Douglass for plaintiff.*
*James A. Lockhart and Bynum & Henry for defendant.*

CONNOR, J. Defendant, in its answer, admitted that plaintiff's intestate, on 9 December, 1924, in the course of his employment by defendant, entered defendant's refrigerating plant and was thereafter found dead in the northwest corner of said plant. The evidence, offered by plaintiff, is sufficient, if believed by the jury, to sustain the allegations of the complaint, that his death was caused by electrocution, resulting from his coming in contact, while in said plant, with machinery therein, which was charged with electricity of sufficient voltage to cause his death, and that said machinery was so charged as the result of negligence of defendant. C. E. D. Edgerton, found by the court to be an expert electrician, testified that the day after Eldridge Gibson's death, at the request of the president of the defendant corporation, he made an investigation of its refrigerating plant. He testified that the feed wire was not grounded; that the purpose of a grounded wire is to direct any stray current that might get on the pipe in which the wires were placed for safety, to the ground; that in his opinion, if the feed wire in the pipe had been grounded, the machinery would not have been charged with electricity; that if there had been a proper ground wire on the feed pipe, at the time of the breaking down of the wires, there would have been an explosion, which would have been a warning to a person in the room where the plant was located. This evidence was sufficient to establish the truth of the allegation that defendant was negligent in failing to have its wires properly installed in its plant.

The court, after correctly instructing the jury, in general terms as to the meaning in law of the terms "negligence," and "proximate cause," further gave the following specific instructions: "So applying this principle, gentlemen of the jury, to the first issue, the court charges you that if the plaintiff has satisfied you by the greater weight of the

evidence that the defendant, in the exercise of ordinary care failed to ground the wires where they entered the building at the southwest corner, and if the plaintiff has further satisfied you by the greater weight of the evidence that by reason of its failure to so ground its wires the defendant failed to provide the plaintiff's intestate with a reasonably safe place in which to perform his work, if the plaintiff has satisfied you by the greater weight of the evidence of these facts, then the court charges you that the defendant was guilty of negligence."

"And if the plaintiff has further satisfied you by the greater weight of the evidence that such negligence on the part of the defendant company was the proximate cause of the injury and death of plaintiff's intestate, then, gentlemen of the jury, the court charges you that it would be your duty to answer the first issue, 'Yes.' On the other hand, gentlemen of the jury, if the plaintiff has failed to satisfy you by the greater weight of the evidence of either of these facts, it would be your duty to answer the first issue, 'No.'" There was no exception to either of these instructions. They are clear, full and correct. There was evidence from which the jury could find facts upon which, under these instructions, it was their duty to answer the issue in the affirmative.

The court instructed the jury that the burden was upon defendant upon both the second and third issues, and that there being no evidence tending to sustain the affirmative of either issue, the jury should answer each issue "No." To these instructions defendant excepted, and assign same as error.

The defendant offered no evidence; we have examined the evidence offered by plaintiff, as set out in the case on appeal and concur with his Honor that there is no evidence from which the jury could find that plaintiff's intestate, by his own negligence, contributed to his injury, resulting in his death, or that plaintiff's intestate assumed the risk of his injury and death as alleged in the answer. No evidence was offered by defendant. The assignments of error cannot be sustained.

In its answer defendant alleges that, "at the time of the death of plaintiff's intestate, he was in a portion of the defendant's refrigerating plant where he had no duty to perform for the defendant and where the defendant had no reason to apprehend or believe that he would be, and that the place where his duties required him to be was a safe place, free from electric current, and had he remained in the place required in the performance of his duties, he would have received no injuries which could have caused his death, and if the death of plaintiff's intestate was caused by electric current, the sole and proximate cause of such death was, that though directed to go to the southeast portion of said plant, turn the switch, adjust the valves, and start the rotary pump, and then

return to his duties in the store, in all of which he would have been safe and uninjured, he negligently, carelessly and wrongfully went into a portion of the refrigerating plant where he had no duty to perform, and there, if he came into contact with an electric current and received injuries which caused his death, such fatal injury was due to the negligence and carelessness of the plaintiff's intestate himself."

The only evidence submitted to the jury as to the duties of deceased, as an employee of defendant, is the testimony of the witness Claud Miles. He testified that "Eldridge Gibson was a clerk in the store and watched after the ice plant. He was supposed to go about once an hour and see about the plant and work in the store, too. The ice plant was not running at this time, but they were running the air pumps and running enough to keep the cold storage room cold. They were not freezing any ice, but they had to keep the market cold." There was no evidence that deceased's duties were restricted as alleged by defendant, and no evidence that he was directed to go only to the southeast part of the room in which the plant was located. Nor is there evidence that he had no duty to perform at the place in the plant where he met his death. The evidence is that it was his duty to "watch after the plant"; defendant admitted that he entered the refrigerating plant in the course of his employment; it offered no evidence from which the jury could have found that it was not his duty to go to the northwest corner of the plant. The authorities cited in defendant's brief therefore have no application to the instant case. Defendant's assignments of error, based upon the exception to the refusal to allow the motion of nonsuit, at the close of plaintiff's evidence, and upon exceptions to the refusal to instruct the jury as requested, are predicated upon facts alleged in the answer; there was no evidence to sustain these allegations. The assignment of error cannot be sustained. We find no error; the judgment must be affirmed.

No error.